ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2008 JAN 16 AM 11: 10

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DORA A. NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV107-004 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Dora A. Neal ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments under the Social Security Act. Upon consideration of the briefs submitted by counsel, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Based upon claims of disability dating back to June 15, 1999, Plaintiff applied for DIB and SSI with a protective filing date of September 21, 1999 and October 20, 1999. Tr. ("R."), pp. 84-86, 369-72. The Social Security Administration denied her original claims and

her request for reconsideration. R. 56-59, 62-64A. On December 11, 2000, the ALJ held a hearing at which Plaintiff, her attorney, and a vocational expert ("VE") appeared. R. 408-47. By decision dated May 9, 2001, the ALJ found Plaintiff was not disabled. R. 41-51. Plaintiff timely requested a review of the unfavorable decision. R. 71. The Appeals Council ("AC") granted the request for review and on September 5, 2002, remanded the matter to the ALJ for further proceedings. R. 77-78.

On February 10, 2004, the ALJ held a supplemental hearing at which Plaintiff, represented by counsel, and a VE testified. R. 448-71. The ALJ again issued an unfavorable decision dated April 28, 2004. R. 16-30. Applying the sequential process required by 20 CFR §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability (20 CFR §§ 404.1520(b) and 416.920(b)).

2. The claimant has the following severe impairments: pain in her back, left hand, and an impairment relating to obesity (20 CFR §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR §§ 404.1520(d) and 416.920(d)).

4. The claimant is unable to perform past relevant work (20 CFR §§ 404.1565 and 416.965). The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR §§ 404.1567 and 416.967). The claimant has the residual functional capacity to perform work with restrictions that require no lifting or carrying over 10 pounds; no standing and/or walking over two hours in an eight-hour workday; a sit/stand option of 45-60 minutes; limited stooping, twisting, crouching, and kneeling; no crawling, balancing or climbing; no repetitive fine dexterity or gripping with the left lower extremity; and avoidance of hazards such as vibration.

> 5. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.26 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples include the semi-skilled, sedentary jobs of doctor's telephone service operator, admitting clerk, and rehabilitation clerk. Thus, the claimant was not under a "disability" as defined in the Social Security Act, at any time from the alleged onset date through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

R. 19-30

When the AC denied Plaintiff's second request for review, the ALJ's decision became the final decision of the Commissioner. R. 9-13. Having failed to convince the AC to review her case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff now argues that the ALJ: (1) failed to give the proper weight to the opinions of Plaintiff's treating physician, (2) erred in giving controlling weight to the state agency medical consultant, and (3) failed, when determining whether Plaintiff meets Listing 1.00Q, to properly consider the cumulative effects of Plaintiff's obesity. Pl.'s Br., pp. 2-5.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing

3

court may not decide the facts anew, re-weigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the

4

decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Weight Accorded to Treating Physician's Opinion

Plaintiff argues that the ALJ failed to accord appropriate weight to the opinion of her treating physician, Faheem Nusrat, M.D. Pl.'s Br., pp. 2-3. In November of 2003, Dr. Nusrat found that Plaintiff was limited to lifting less than 10 pounds occasionally; one hour maximum standing/walking (10-15 minutes at a time); sit 2-3 hours maximum (20 minutes at a time); occasional climbing, kneeling but no stooping, crouching or crawling; limited reaching and pushing/pulling; and no vibration. R. 317-19. The ALJ concluded that the degree of limitation that Dr. Nusrat attributed to Plaintiff exceeded the degree of limitation established by the medical record. R. 25. Plaintiff argues that if the ALJ had properly accepted Dr. Nusrat's opinion, the ALJ would have concluded that Plaintiff was unable to perform a significant range of sedentary work.[1]

Plaintiff specifically contends that the ALJ did not take into account that Dr. Nusrat's records included a letter dated September 15, 1999 from John B. Bieltz, D.O. (R. 209), the results of an MRI done of Plaintiff's lumbar spine (R. 226), and a questionnaire

---

[1] Sedentary work involves:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

5

completed by Dr. Nusrat with attached labs, X-rays, and MRI results. (R. 212). Pl.'s Br., pp. 2, 3. Thus, according to Plaintiff, in failing to consider these reports as a part of Dr. Nusrat's records, the ALJ erred in discounting Dr. Nusrat's opinion regarding the extent of Plaintiff's limitations. (Id.).

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Here, the ALJ determined, "The record contains several opinions from Dr. Faheem Nusrat, the claimant's family physician, all of which are also found unsupported by the record." R. 25. As noted above, Plaintiff challenges the ALJ's determination that Dr. Nusrat's opinions were not supported by the record. Pl.'s Br., p. 2. First, Plaintiff argues that the ALJ failed to consider the effects that Plaintiff's obesity may have had on Dr.

Nusrat's opinions. Id. More specifically, Plaintiff asserts that the ALJ erred in concluding that Dr. Nusrat based Plaintiff's limitations primarily on subjective reports and allegations, rather than medically acceptable clinical and laboratory findings. Id. Plaintiff contends that the ALJ failed to acknowledge that Dr. Nusrat's records included: (1) the results of an MRI performed on Plaintiff's lumbar spine (R. 209); (2) a questionnaire Dr. Nusrat completed, identifying the clinical findings, laboratory and test results which showed Plaintiff's medical impairments (R. 212); and (3) a letter dated September 15, 1999 from Dr. Bieltz of Thomson Orthopedic and Sports Medicine (R. 209). Pl.'s Br., p. 3.

Initially, the Court disagrees with Plaintiff's deduction that the ALJ's conclusion discrediting Dr. Nusrat's opinion is incorrect because the ALJ concluded Dr. Nusrat relied primarily on subjective reports in his records. Plaintiff argues that in fact, Dr. Nusrat's records consist of both subjective reports and objective reports. Plaintiff contends that the ALJ's statement that the degree of Dr. Nusrat's limitation are based "primarily on subjective reports and allegations from the Claimant rather than medically acceptable clinical and laboratory findings and thus, cannot be given controlling or great weight" means that the ALJ failed to acknowledge that Dr. Nusrat's records also contained medically acceptable clinical and laboratory findings. Pl.'s Br., p. 2. The Court does not interpret the ALJ's statement to mean that he did not consider those objective reports in his determination; rather that, Dr. Nusrat relied on those subjective reports for his determination. Stated otherwise, even though these objective reports were in Dr. Nusrat's records, Dr. Nusrat opted to rely more heavily on the subjective reports rather than the objective evidence within his own records to reach his conclusions about Plaintiff's limitations.

7

The ALJ substantiates his decision to discredit Dr. Nusrat's opinions by explaining that:

> [Dr. Nusrat's] notes show only "mild tenderness" in the lumbar region and an occasional positive straight leg raise but never any gait disturbance, strength deficits, circulatory compromise, neurological deficits, significant edema, significant muscle spasms, wasting or atrophy. EMG and nerve conduction study on the left lower extremity in July of 2000 was normal. He has encouraged the claimant to lose weight and exercise and has told her to "walk every day."

R. 25. Thus, the ALJ merely concluded that Dr. Nusrat did not rely as heavily on the objective medical reports in his records as he did on his subjective medical reports in formulating his opinion on Plaintiff's limitations. Therefore, the ALJ concluded that Dr. Nusrat's opinions on the severity of Plaintiff's limitations were not supported by the record.

Moreover, Plaintiff also misses the mark arguing that the ALJ failed to acknowledge that Dr. Nusrat's records included: (1) a letter dated September 15, 1999 from Dr. Bieltz of Thomson Orthopedic and Sports Medicine (R. 209); (2) the results of an MRI done of the lumbar spine showing that Plaintiff had among other things, moderate to severe canal stenosis and bulging disc (R. 226), and (3) a questionnaire completed by Dr. Nusrat (R. 212). Pl.'s Br., pp. 2-3. Not only did the ALJ reference these objective reports within his opinion and note that they were a part of the record, but he also determined that Dr. Nusrat's opinions regarding Plaintiff's limitations did not coincide with those records. R. 24-26. Thus, it was the ALJ's conclusion that those reports did not support Dr. Nusrat's conclusion.

For example, Plaintiff argues that the ALJ did not take into account Dr. Bieltz's letter, but the ALJ's opinion provided:

8

> The evidence of record reveals that the claimant has moderate to severe lumbar spinal stenosis, a condition that reasonably results in some limitations but does not preclude all work activity. The claimant has been treated conservatively since 1998 and is "not a surgical candidate." Dr. Bieltz, an orthopedic, evaluated the claimant one time in September of 1999 and found lumbar tenderness and positive straight leg raise at 40 degrees on the left. MRI was consistent with moderate to severe lumbar stenosis with disc bulging.

R. 24, 209-10. Similarly, the ALJ also specifically referenced the questionnaire completed by Dr. Nusrat (R. 212) on page seven of his report[2] and specifically referenced the results of the MRI.[3] R. 21, 25. Moreover, it should perhaps be observed that, even if the ALJ had not specifically referred to every piece of evidence, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that [the ALJ] considered [the evidence] as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*) (quoting Foote v. Chater, 167 F.3d 1553, 1558 (11th Cir. 1995)); see also McCray v. Massanari, 175 F. Supp.2d 1329, 1336 (M.D. Ala. 2001)

---

[2]The ALJ's opinion provides:

> [Dr. Nusrat] signed another statement (undated) that indicated the claimant could walk less than one block; sit 30 minutes at a time; stand/walk less than 2 hours, 10-15 minutes at a time; would need to shift position frequently; would require unscheduled breaks 8-10 times a day, each lasting 10 minutes; must use a cane to stand/walk; lift less than 10 pounds frequently and 20 pounds occasionally; rarely twist, stoop, crouch or climb; no repetitive reaching with the left hand; and that the claimant would likely miss more than 4 days of work in a month (Exhibit 6F, pgs 2-5).

R. 25, 212-15.

[3]An MRI in August of 1999 revealed L3-4 stenosis with evidence of neuroforaminal stenosis at both levels greater on the left (Exhibit 6F, p. 16). R. 226.

9

(ALJ not required to discuss every piece of evidence in the record). Here, the ALJ's opinion shows that he carefully cataloged all medical reports and considered the record as a whole.

Furthermore, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. In this case the ALJ found, and the substantial evidence supports, that Dr. Nusrat's opinions are both unsupported by the objective medical record and his own medical records. R. 25.

As the ALJ explained, Dr. Nusrat noted that Plaintiff has "mild tenderness" in the lumbar region and an occasional positive straight leg raise but never any gait disturbance, strength deficits, circulatory compromise; he also recommends that she "walk every day." Id. However, Dr. Nusrat then asserts that Plaintiff can only walk less than one block, must use a cane to stand and walk, she can lift less than 10 pounds frequently and 20 pounds occasionally, she can rarely twist, and the list goes on. . . . Id. The ALJ merely determined that Dr. Nusrat relied more heavily on the subjective reports contained in his records to support his opinions regarding Plaintiff's limitations, as opposed to the objective reports in his record. Id. In sum, although it is true that Dr. Nusrat is properly labeled as a treating physician by virtue of his on-going relationship with Plaintiff, the fact is, as the ALJ pointed out and as was discussed above, the opinions are not supported by the objective medical evidence in Dr. Nusrat's records. Thus, there was no error in the ALJ's assessment of this treating physician's opinion.

## B. Weight Accorded State Agency Medical Consultant

Plaintiff next contends that the ALJ erred in giving controlling weight regarding Plaintiff's RFC to the opinion of Ernie E. Lin, MD, because Dr. Lin merely did a consultive examination on Plaintiff. Id. at 3. It appears that Plaintiff is dissatisfied with the ALJ's decision to give Dr. Lin's opinion credence, the Court presumes, because Dr. Lin's opinion supports the ALJ's conclusion that the Plaintiff's limitations are not as extensive as Dr. Nusrat opines them to be. However, Plaintiff chooses to compare Dr. Lin's opinion with Dr. Bieltz's opinion, to show that the ALJ should have treated their respective opinions equally, because both doctors' opinions were based on a one-time examination.

According to Social Security Ruling 96-6p, findings of fact made by State Agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. Although ALJs are not bound by the findings of state agency doctors, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p. Plaintiff's specific argument is that the ALJ gave controlling weight regarding Plaintiff's RFC to Dr. Lin, who merely did a consultative examination on Plaintiff; yet according to Plaintiff, the ALJ discredited the opinion of Dr. Bieltz for the same reason - his opinions are based on a one-time examination. Pl.'s Br., p. 3. Plaintiff's argument is misguided.

The ALJ discredited Dr. Bieltz's opinion because the record did not support the doctor's findings regarding Plaintiff's limitations. The ALJ's report provides:

11

Upon reviewing the clinical findings in [Dr. Bieltz's] report, <u>I found them consistent with an individual capable of light duty activity; however, not supportive of the limitations reflected in his assessment</u> of April 2003, that was made more than three years later []. Accordingly, <u>weight is given the opinions made by Dr. Bieltz</u> only insofar as the claimant is capable of lighter type work activity.

R. 25 (emphasis added). So, while the ALJ does note that Dr. Bieltz was not Plaintiff's treating physician and based his opinions on a one-time examination made in September 2003, R. 25, he provided a valid reason for discrediting Dr. Bieltz's opinion, namely it was not supported by the record. Id.

Moreover, the ALJ treated the opinion of Dr. Lin, a state agency medical consultant, in accordance with the Social Security regulations. Notably although, the ALJ was not bound by Dr. Lin's opinion, his opinion was given significant weight because:

> Although Drs. Bieltz and Nusrat have submitted reports that suggest a significant worsening in the claimant's conditions, particularly her musculoskeletal impairments, resulting in an inability to work full-time, their treatment notes do not support that decline and contrast sharply with the report of Dr. Lin, who examined the claimant four years after her alleged onset date and found her capable of a restricted range of light work activity. For these reasons, significant weight has been given the opinion of Dr. Lin in arriving at my decision.

R. 26. Thus, the ALJ did not err in giving Dr. Lin's opinion greater weight than that of Dr. Bieltz.

### C.     Plaintiff Did Not Meet Listing 1.00Q

At the third step of the sequential evaluation process, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR §§ 404.1520(d) and 416.920(d)). Plaintiff argues that she meets

Listing 1.00Q,[4] but the ALJ improperly ruled otherwise because he improperly failed to consider the cumulative effects of Plaintiff's obesity.

The Court notes from the outset that Plaintiff bears the burden of showing that her condition meets or equals the Listing. Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that her impairment meets a Listing, Plaintiff needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments that are considered severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age,

---

[4]Listing 1.00Q provides:

Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. § 404, Subpart P, App. 1, 1.00Q.

education, or previous work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

To the extent that Plaintiff generally argues that the ALJ did not consider the combined effects of Plaintiff's impairments, Pl.'s Br., p. 5, that argument must fail. According to Plaintiff, the ALJ did not go into sufficient detail regarding his consideration of the combined effect of the Plaintiff's obesity and musculoskeletal complaints, other than to say he considered these combined effects. Id. However, as the Commissioner points out (Comm'r Br., pp. 8-10), the ALJ acknowledged and discussed the combined effects of Plaintiff's obesity.[5] For example, the ALJ's explained:

> The record also shows that the claimant is morbidly obese. . . . Her obesity has not resulted in any cardiovascular, pulmonary or diabetes mellitus as often occurs and none of her physicians have found her obesity of such severity as to warrant gastric bypass surgery. The record does, however, show that her weight does impact on her musculoskeletal difficulties, however, there is no evidence of joint instability.

R. 24. In the Eleventh Circuit, use of the language indicating consideration of an impairment, <u>or combination of impairments</u>, is a sufficient basis upon which to conclude that the ALJ considered the combined effect of Plaintiff's impairments. <u>Wilson v. Barnhart</u>,

---

[5]Moreover, the Court finds unavailing Plaintiff's argument (Pl.'s Br., p. 5) that the ALJ did not go into sufficient detail as to why Plaintiff's obesity did not affect her residual functional capacity and instead chose to focus on Plaintiff's failure to follow the doctor's advice regarding weight loss and exercise.

Plaintiff argues that because the ALJ mentioned that doctors recommended that Plaintiff lose weight on several occasions, the ALJ improperly concluded that Plaintiff has failed to follow prescribed treatment. Id. at 4. Plaintiff contradicts her own argument that the ALJ erred in denying Plaintiff benefits for failure to follow a prescribed treatment by stating, "While the ALJ never stated that he was denying benefits because of the Plaintiff's failure to follow prescribed treatment. . . ." Id. As Plaintiff concedes, no where does the ALJ claim he denied Plaintiff disability benefits for failure to follow a prescribed treatment. Thus, Plaintiff's contention that she was denied benefits from a failure to follow prescribed treatment is baseless.

284 F.3d 1219, 1224-25 (11th Cir. 2002) (*per curiam*) (citing Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (*per curiam*). As the ALJ's opinion took into account Plaintiff's multiple impairments and stated that he considered Plaintiff's impairments in combination, Plaintiff's argument on this point is without merit.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this  16th day of January, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE